**538**

Sergio HERNANDEZ, et al., Plaintiffs,

v.

HENDRIX PRODUCE, INC.; Ray Earl Hendrix, individually; and Yesenia Merino, individually, Defendants.

No. CV613–053.

United States District Court,
S.D. Georgia,
Statesboro Division.

Signed Jan. 9, 2014.

Dawson Morton, Lisa J. Krisher, Leah Lotto, Georgia Legal Services, Atlanta, GA, for Plaintiffs.

George H. Rountree, Laura Harriman Wheaton, Brown Rountree, PC, Statesboro, GA, J. Larry Stine, Wimberly, Lawson, Steckel, Schneider Stine, PC, Atlanta, GA, for Defendants.

## ORDER

SMITH, United States Magistrate Judge.

■ The Mexican migrant worker plaintiffs in this farmworker rights case[1] move for a protective order against the Hendrix defendants' Fed.R.Civ.P. 30(b)(1) notice requiring them to travel from afar (mostly Mexico) to Statesboro, Georgia (office of defense counsel). Doc. 36; *see also* doc. 36–2. They contend that while it is normal for plaintiffs to be deposed in the forum they selected (hence, Statesboro would otherwise be proper), they are "poor laborers who reside in rural Mexico" and all but one lack the necessary immigration status to freely return to the U.S. Doc. 36 at 2, 9. They want defense counsel to depose them in Mexico, if not by phone or with written questions per Fed.R.Civ.P. 31. *Id.* at 2–3. The lawyers have conferred but defendants refuse plaintiffs' proposed alternatives. *Id.* at 7.

Plaintiffs remind that they had no real choice of forum (the defendants reside in this district), so it would be unfair to so burden them merely on that (forum-selection) basis. Doc. 36 at 10–12. Nor, they further point out, have the defendants even attempted less burdensome discovery methods. *Id.* at 12–13. Finally, they estimate that defense counsel can depose them in Mexico for under $1000, while it would collectively cost them some $15,000 to comply with defendants' deposition notice. *Id.* at 13–14.

Opposing, the defendants are adamant: "While plaintiffs may be indigent, they are still bound by the rules of Civil Procedure and must make themselves available for discovery, including depositions." Doc. 38 at 2. The plaintiffs, the defense underscores, failed to set forth any initial damages in their initial disclosures; "their Complaint is little more than a fishing expedition based on assump-

tions and stereotypes." *Id.* at 2–3. Consequently, the "Hendrix defendants have already spent a great deal of money defending this case and securing electronic data, much of which being not relevant to plaintiffs' claims." *Id.* at 3. So "[i]t would be inequitable to also place the financial burden of having to fund a trip to Mexico solely on the Hendrix defendants just to [depose plaintiffs]." *Id.*

The Hendrix defendants also argue that the written or telephone deposition option will not suffice because plaintiffs' claims against them hinge on whether these defendants were the joint employers of the plaintiffs. Since that involves a "fact-intensive analysis," counsel "must be able to examine plaintiffs directly and ask follow-up questions to prepare [the Hendrix defendants'] defense. And because of the language barrier, a telephonic deposition would likely prove too confusing for discovery purposes." Doc. 38 at 3. Defendants also complain that plaintiffs' counsel has been too cursory in upholding his duty to confer with defense counsel on this matter. *Id.* Finally, if the Court grants relief, then the plaintiffs should absorb some if not all of the alternative deposition expenses. *Id.* at 4.

■ Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from ... undue burden or expense." Fed.R.Civ.P. 26(c)(1). Plaintiffs must show that good cause. *Boards of Trustees of Ohio Laborers' Fringe Ben. Programs v. A2 Services, LLC,* 2013 WL 5723069, at *1 (S.D.Ohio Oct. 18, 2013). That's a "heavy burden." *Powertech Technology, Inc. v. Tessera, Inc.,* 2013 WL 3884254, at *1 (N.D.Cal. July 26, 2013). And "[t]ypically, the defendants are entitled to depose a plaintiff in the forum where plaintiff

---

1. From the first two paragraphs of their complaint:

   1. Plaintiffs and Opt–In Plaintiffs are migrant agricultural workers recruited by Defendants in Mexico in 2009, 2010, 2011 and 2012 to work for Defendants in and around Candler County, Georgia. Plaintiffs file this action on behalf of themselves and other similarly-situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2. Defendants were sued for the same violations in 2010. *Garcia–Mancha, et al., v. Hendrix Produce, Inc., et al.,* 6:10–CV–36 (S.D.Ga.). However, Defendants continue to underpay their workers in violation of the FLSA and their employment contracts, including by falsifying daily hours worked and by forcing workers to endorse and cash checks and then return the money to their supervisors.
   Doc. 1 at 1.

has chosen to sue. *See* 8A Fed. Prac. & Proc. Civ. § 2112 (3d ed. Dec. 2012)." *Modica v. Cox*, 2013 WL 1281759, at *2 (E.D.Cal. Mar. 26, 2013).

▮ Both sides here raise valid points that pivot on every litigant's duty to: (a) stop and think before signing discovery requests and protective motions;[2] and, (2) as commanded by local rule, confer before involving the Court. *See* Local Rule 26.4 ("[c]ounsel are reminded that Fed.R.Civ.P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court."). This Court enforces that rule. *Scruggs v. Int'l Paper Co.*, 2012 WL 1899405, at *2 (S.D.Ga. May 24, 2012).[3] It is questionable whether counsel sufficiently conferred here.

This much is clear: Given the education and economic level of migrant workers, they may not be in possession of the information and expertise necessary to reasonably calculate and thus disclose their claimed losses at the front end of cases like this. So the Court is not as impressed as the defendants want it to be about their failure to clarify their damages at the outset of this case, and how much that failure should influence the decision here. Conversely, the defendants have not rebutted plaintiffs' showing about their economic disadvantage.

Other cases present a technology evidently not discussed here, yet could support a compromise: Skype. As explained elsewhere: "Skype is an internet communication service that provides live, two-way audio and video communication." *Julian v. State*, 319 Ga.App. 808, 738 S.E.2d 647, 649 n. 4 (Ga.App.2013) (citation omitted). Akin to the telephonic communication foreshadowed by Dick Tracy and the Jetsons, Skype permits individuals using webcams to see each other while conversing over the internet. During the live-streaming communication, the images recorded by a webcam appear on the other user's monitor screen. Any person within eyesight and earshot of the computer monitor can observe the participant's image and hear his or her words. In other words, Skype offers a program that permits a person to see and hear another person, who is in a different location, using a webcam and the internet.

*Com. v. Levy*, 83 A.3d 457, 463, 2013 WL 6843076, at *5 (Pa.Super.2013).

Skype is now used to facilitate many a human interaction. Courts now base parent-child visitation orders on it. *See, e.g., Young v. Young*, 2013 Ark. App. 707, 2013 WL 6281669, at *3 (Ark.App. Dec. 4, 2013) (affirming child custody order directing visitation via Skype). "Skype marriages" are now feasible. *See Tshiani v. Tshiani*, 208 Md.

---

**2.** By signing a discovery request, response or objection, they certify that "to the best of [their] knowledge, information and belief formed after a reasonable inquiry," Rule 26(g)(1), the request, response or objection is consistent with the Federal Rules of Civil Procedure and existing law, Rule 26(g)(1)(B)(i), is not interposed for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation), Rule 26(g)(1)(B)(ii), and is "neither unreasonable nor *unduly burdensome or expensive*, considering the needs of the case," the amount in controversy, or the significance of the issues at stake in the litigation. Rule 26(g)(1)(B)(iii) (emphasis added). Sanctions await those who violate this obligation. *See* Fed.R.Civ.P. 26(g)(3).

Litigants, then, must "stop and think." *Bottoms v. Liberty Life Assur. Co. of Boston*, 2011 WL 6181423, at *4 (D.Colo. Dec. 13, 2011) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through Rule 37, and obligates each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection.") (quotes and cite omitted).

**3.** Requiring meaningful consultation can lead to informal resolution and thus conservation of court resources. *Avera v. United Airlines, Inc.*, 465 Fed.Appx. 855, 858–59 (11th Cir.2012) (magistrate judge did not abuse his discretion in denying, without prejudice, plaintiff's motion to compel discovery where plaintiff had not sought to resolve his discovery dispute with defendant before filing the motion); *In re Rhodes Companies, LLC*, 475 B.R. 733, 742 (D.Nev.2012) (affirming bankruptcy court's denial of protective-order motion based on moving party's failure to include such certification, rejecting "futility" assertion); *Jo Ann Howard & Associates, P.C. v. Cassity*, 2012 WL 1247271, at *8 (E.D.Mo. Apr. 13, 2012) (rejecting compulsion request in part because "the failure of the parties to communicate *materially* impeded their resolution of this matter.") (emphasis added).

App. 43, 56 A.3d 311, 321–22 (2012). And Skype depositions have been used where travel is cost prohibitive. *Yu Hui Chen v. Chen Li Zhi,* 109 A.D.3d 815, 971 N.Y.S.2d 139, 140 (2013); *MPD Accessories, B.V. v. Urban Outfitters, Inc.,* 2013 WL 4399199, at *3 (S.D.N.Y. Aug. 13, 2013); *see also Mody v. Center for Women's Health, P.C.,* 998 A.2d 327, 336 (D.C.2010) ("We do not hold that appellees were required to use a service such as Skype, but we do hold that their decision to use the expensive alternative they chose must be explained on the record before the trial court may exercise its discretion to approve the expense."); Fed.R.Civ.P. 30(b)(4) (authorizing depositions "[b]y remote means").

The Court **GRANTS** in part and **DENIES** in part plaintiffs' protective-order motion. Doc. 36. Counsel are **DIRECTED** to re-confer, within 14 days of the date this Order is served, and negotiate Skype-based depositions with accompanying translation and recordation services. To that end, plaintiffs should rightly bear $1000 of that expense, since it is their case and they would be spared the $15,000 in expenses they cite above. Alternatively, plaintiffs may elect (upon the Hendrix defendants' consent) to contribute $1000 toward the cost of defense counsel's travel to Mexico for live depositions.